```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| Leslie and Gerald Young, | ) | |
| | ) | |
|     Plaintiffs, | ) | Case No.  5:11-cv-00396-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| Kentucky Department of | ) | **MEMORANDUM OPINION AND ORDER** |
|     Corrections, et al. | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| | ) | |

                  **   **   **   **   ****

This matter is before the Court on motions to dismiss filed by Defendants Grady Perry [DE 22], Warden of the Otter Creek Correctional Center, and Daniel Akers [DE 24], Warden of the Marion Adjustment Center.  Plaintiffs objected to Defendants' Motions to Dismiss [DE 35 & 36], and Defendants have replied to Plaintiffs' objection [DE 37 & 38].  After Plaintiffs filed an Amended Complaint, Defendants Akers and Perry renewed their motions to dismiss [DE 42 & 43].

This matter stems from Defendant Warden Steve Haney's refusal to allow Leslie Young to visit her husband Gerald while he was incarcerated at Northpoint Training Center and the ramifications of Warden Haney's refusal. Plaintiffs Leslie and Gerald Young claim that the Defendants' denial of in-person visitation, without hearing or other process, deprives

Plaintiffs of their rights established by the First, Eighth, and Fourteenth Amendments in violation of 42 U.S.C. § 1983.[1]  Wardens Akers and Perry argue that Plaintiffs fail to allege that they have denied or will deny Plaintiffs' visitation and, thus, that Plaintiffs fail to allege that Wardens Akers and Perry have harmed them.  While not stated as such, Wardens Akers and Perry argue that Plaintiffs claim against them is not ripe.  This Court agrees and further concludes, for the same reason, that Plaintiffs cannot demonstrate that they have suffered or will suffer any harm from Wardens Beckstrom, Taylor, Meko, Parker, Henson, Bottom, White, and Sweat, who have not yet moved for dismissal of the claims against them.  The Court will therefore dismiss those claims, *sua sponte*, for lack of subject matter jurisdiction.[2]  Fed. R. Civ. P. 12(h)(3).

---

[1] Plaintiff's Amended Complaint [DE 40] adopts and incorporates the original Complaint [DE 1] by reference.  Accordingly, citations herein will be to both the Complaint [DE 1] and Amended Complaint [DE 40].

[2] It is worth noting that Plaintiffs have had adequate opportunity to address the rationale underlying this Court's decision by responding to Warden Akers and Perry's motion and by filing an Amended Complaint.  The issues raised by Wardens Akers and Perry were, essentially, related to ripeness and represent the same issues upon which this Court relies herein.

**I. Background**

This dispute arises from a decision made by Warden Steve Haney of Northpoint Training Center, permanently suspending Plaintiff Leslie Young's right to visit her husband, Plaintiff Gerald Young, at Northpoint. Gerald and Leslie were married on March 2, 2009 at the Western Kentucky Correctional Facility. [DE 1, ¶25.] At all relevant times, Gerald has been serving a life sentence for complicity to commit murder. [DE 1, ¶26.] According to Plaintiffs, the couple enjoyed both contact and non-contact visitations at various prison facilities in Kentucky before and after their marriage. [DE 1, ¶27-28.] Gerald Young was transferred to Northpoint Training Center in October 2010. [DE 1, ¶30.] He was able to visit with Leslie until November 29, 2010, at which point he was placed in segregation while a complaint that he made against a Northpoint guard was investigated. [DE 1, ¶31-32.]

Warden Haney informed Leslie that she was permanently banned from visiting "Northpoint Training Center or any other correctional institution in the state of Kentucky" by letter, dated December 1, 2010. [DE 1, ¶33; DE 1-1.] The letter provided no factual basis for Warden Haney's decision but cited certain sections of the Kentucky Department of Corrections Policies and Procedures, specifically CPP 16.1, Section II,

3

Paragraphs E, No. 1 and K, No. 3, codified at 501 KAR 6:020.[3] [DE 1, ¶33-34; DE 1-1.]

According to Leslie, she asked a number of people why she was banned and how her visitation rights might be reinstated. [DE 1, ¶36.] Plaintiff claims that she never received any explanation for the ban. [DE 1, ¶36.]

Plaintiffs also allege that Warden Haney spoke with some of the wardens of other facilities in the Commonwealth about Mrs. Young's visitation history and his decision to ban her at a regular meeting. [DE 40, ¶3-5.] Leslie Young avers that she was told by several state government employees and officials that it did not matter where her husband was incarcerated, even if he was transferred, because all of the wardens would honor the ban. [DE 40, ¶7.] She avers that she was told that none of the other wardens would reconsider, provide any hearing, or consider any lesser form of visitation restrictions. [DE 40, ¶7.]

Sometime after Warden Haney's decision, Gerald Young was transferred to the Kentucky State Reformatory where Leslie

---

[3] "A visitor may be excluded from the institution if: (1) The presence of the visitor in the institution constitutes a probable danger to institutional security or interferes with the orderly operation of the institution…" CPP 16.1, Sec. II, Para. E (1). "A visitor may be restricted for a specific period of time or permanently for violation of institutional policies and procedures or violations of law." CPP 16.1, Sec. II, Para. K (3).

Young's request to visit her husband was denied by Warden Cookie Crews in a letter referencing Warden Haney's decision. [DE 40 at ¶9-11; DE 40-2.]

There is no allegation that any of the other Warden Defendants have denied visitation to Plaintiffs at any time.

## II. Discussion

Plaintiffs have named as defendants the Kentucky Department of Corrections; LaDonna H. Thompson, Commissioner of the Kentucky Department of Corrections; Jim Erwin, Deputy Commissioner of the Kentucky Department of Corrections; and Steve Haney, individually and in his official capacity as Warden of Northpoint Training Center as well as every other Warden in the Commonwealth in their official capacities.[4]

With respect to the individual warden defendants, they fall in four categories: (1) Wardens Haney and Crews, who have explicitly denied visitation to Plaintiffs while Gerald was

---

[4] The other wardens are Gary Beckstrom, Warden of Eastern Kentucky Correctional Complex; Clark Taylor, Warden of Luther Luckett Correctional Complex; Joseph Meko, Warden of Little Sandy Correctional Complex; Phillip W. Parker, Warden of the Kentucky State Penitentiary; Cookie Crews, Warden of the Kentucky State Reformatory; Bryan Henson, Warden of the Western Kentucky Correctional Facility; Don Bottom, Warden of Blackburn Correctional Complex; Randy White, Warden of Green River Correctional Complex; Daniel Akers, Warden of the Marion Adjustment Center; James Sweatt, II, Warden of Roederer Correctional Complex; and Grady Perry, Warden of the Otter Creek Correctional Center.

incarcerated at their facilities; (2) Defendant Beckstrom, in whose facility Gerald Young is currently incarcerated and whom Plaintiffs do not aver has denied them visitation; (3) Wardens Akers and Perry, who have held Gerald at their facilities in the past,[5] and who may hold Gerald in their facilities in the future, but who have not denied Plaintiffs' visitation; and (4) all the other wardens, whose facilities may have held Gerald at their facilities in the past and may hold him in their facilities in the future, but who have never denied Plaintiffs' visitation at any time based on the allegations in the Complaint.  Plaintiffs' claims are only ripe as to the first group of Warden Defendants, Wardens Haney and Crews, because they are the only Wardens who have allegedly harmed Plaintiffs by denying them visitation.

The Constitution only extends the judicial power to those legal questions presented in "Cases" or "Controversies." U.S. Const. Art. III, §2.  This case implicates ripeness, a "doctrine [that] exists to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville,* 274 F.3d 377, 399 (6th Cir. 2001) (citing *Dixie Fuel*

---

[5]   The Amended Complaint does not allege any facts related to Gerald's incarceration at Warden Akers and Perry's facilities, but the Wardens' motions to dismiss acknowledge that Gerald was incarcerated at those facilities at some time prior to Warden Haney's denial of visitation.

6

*Co. v. Comm'r of Soc. Sec.,* 171 F.3d 1052, 1057 (6th Cir. 1999))(internal quotations omitted). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction." *Bigelow v. Michigan Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992) (citing *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990)). Thus, the Court may review the claims against all of the wardens, even if a motion to dismiss is not pending, and dismiss *sua sponte* any and all unripe claims against defendants. *Id.*

The court must weigh the following factors to determine if a claim is ripe: "(1) the likelihood that the harm alleged by the party will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003)(citation omitted). "Ripeness requires that the injury in fact is certainly impending." *Déjà vu*, 274 F.3d at 399 (citing *NRA v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)).

Because Warden Haney and Warden Crews have affirmatively denied visitation to the Plaintiffs, those claims are ripe. Plaintiffs have sufficiently alleged that harm was caused by Warden Haney and Warden Crews. As to all of the other groups of

7

warden defendants, Plaintiffs' claims are not ripe. Warden Beckstrom is the warden at the facility where Gerald is currently incarcerated. While Warden Beckstrom is capable of denying visitation, there is no allegation that he has done so or that such action is impending. Thus, according to the averments in Plaintiffs' Amended Complaint, Warden Beckstrom has not harmed the plaintiffs.

Likewise, Wardens Perry and Akers, as well as the other Warden Defendants, have not allegedly harmed Plaintiffs. The only harm alleged regarding these two groups of defendants is that they may potentially house Gerald Young in their facilities at some point in the future and, at that time, if asked, might deny visitation rights. Gerald Young may never be housed at any of the other facilities whose wardens have been named. A transfer to another facility may not occur for years, if at all.

At most, Plaintiffs allege that "Warden Haney also talked to some of the other wardens about Leslie Young's visitation history at their facilities" at a monthly meeting of the wardens. These allegations are insufficient to demonstrate an injury that is "certainly impending." *Déjà vu,* 274 F.3d at 399 (citation omitted). Importantly, Plaintiffs do not allege that any of the warden defendants participated in Warden Haney's original decision to deny visitation or that the wardens have

any type of supervisory authority over each other. "As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *United Public Workers v. Mitchell,* 330 U.S. 75, 89 (1947). Leslie's potential inability to visit Gerald at a prison where Gerald is not held does not constitute a direct, impending threat.

That Gerald Young may never be incarcerated at any other warden's facility is reason enough to find that Plaintiffs' claims are not ripe as to the other wardens. However, this Court also notes that, as stated in Plaintiffs' complaint, visitation decisions are within the discretion of the individual warden. Thus, despite the alleged informal policy of honoring the other wardens' decisions, there is no guarantee that, at some distant point in the future, the wardens would adhere to Warden Haney's decision.

Further, when determining hardship, the "court examines only what difficulties befall Plaintiffs during the pendency of this proceeding." *Cincinnati Sch. Dist. v. Bd. of Educ.*, 2005 WL 6781829, *4 (6th Cir. October 17, 2005) (unpublished decision). The analysis concerns "harm occurring presently and until a court hears the claims at issue," not whether specific courts "will serve as an appropriate forum for those claims in the future." *Id.* As Mr. Young is not incarcerated at the other

9

facilities, no harm, according to the hardship analysis described above, can occur as a result of the dismissal of the other warden defendants. *See Dealer Computer Servs. v. Dub Herring Ford,* 623 F.3d 348, 357 (6th Cir. 2010)

With the exception of the claims brought against Wardens Haney and Crews, Plaintiffs claims against the other Warden Defendants are not ripe, and, thus, this Court lacks subject matter jurisdiction on those claims.

### III. Conclusion

Based on the foregoing, **IT IS ORDERED** that the Motions to Dismiss Defendants Akers and Perry [DE 22, 24, 42 & 43] are **GRANTED** and the claims against them are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. **IT IS FURTHER ORDERED t**hat the claims against the following Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction:

- a) Defendant Clark Taylor, Warden, Luther Luckett Correctional Complex;
- b) Defendant Joseph Meko, Warden, Little Sandy Correctional Complex;
- c) Defendant Phillip W. Parker, Warden, Kentucky State Penitentiary;
- d) Defendant Bryan Henson, Warden, Western Kentucky Correction Facility;
- e) Defendant Don Bottom, Warden, Blackburn Correctional Complex;
- f) Defendant Randy White, Warden, Green River Correctional Complex;
- g) Defendant Gary Beckstrom, Warden, Eastern Kentucky Correctional Complex; and
- h) Defendant James Sweatt, II, Warden, Roederer Correctional Complex.

This the 20th day of September, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge